# United States District Court

FOR THE

**NORTHERN DISTRICT OF CALIFORNIA**

VENUE: SAN FRANCISCO

---

UNITED STATES OF AMERICA,

V.

LUKE BRUGNARA

DEFENDANT(S).

---

## INDICTMENT

18 U.S.C. § 1343 – Wire Fraud
18 U.S.C. § 1957 – Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity
18 U.S.C. §§ 981(A)(1)(C), 982(A)(1) and 28 U.S.C. § 2461(c) – Forfeiture Allegation

---

**FILED**

May 21 2024

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

---

A true bill.

/s/ Foreperson of the Grand Jury

Foreman

Filed in open court this  21st  day of

May, 2024

Clerk

Bail, $ No Process

Hon. Sallie Kim, U.S. Magistrate Judge

1  ISMAIL J. RAMSEY (CABN 189820)
   United States Attorney

FILED

May 21 2024

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO.   3:24-cr-00277 MMC |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | VIOLATIONS: |
| | ) | 18 U.S.C. § 1343 – Wire Fraud (Nine Counts); |
| LUKE BRUGNARA, | ) | 18 U.S.C. § 1957 – Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity (Three Counts) |
| Defendant. | ) | 18 U.S.C. §§ 981(A)(1)(C), 982(A)(1) and 28 U.S.C. § 2461(c) – Forfeiture Allegation |
| | ) | |

INDICTMENT

The Grand Jury charges:

Introductory Allegations

At times material to this Indictment:

1.  Defendant LUKE BRUGNARA was a resident of San Francisco, California, within the Northern District of California. BRUGNARA was in federal prison from in or about June 2010 through May 2012 and from in or about October 2015 through November 2020.

2.  Brugnara Corporation, a real estate investments business, was a California corporation formed in or around 1992. According to documents filed with the California Secretary of State, BRUGNARA served as the company's chief executive officer, chief financial officer, secretary, registered agent, and sole director.

INDICTMENT

The Small Business Administration

3. The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA facilitated loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

The Economic Injury Disaster Loan Program

4. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

5. One source of relief provided by the CARES Act was the expansion of an existing disaster-related program, the Economic Injury Disaster Loan (EIDL) program, which provided for loan assistance for small businesses and other eligible entities. EIDL proceeds could be used to pay fixed debts, payroll, accounts payable, and other necessary financial obligations that could not be met as a direct result of the disaster. Eligible applicants could also request and receive immediate advances of up to $10,000, which would not have to be repaid.

6. EIDL funds were issued directly from the United States Treasury, and applicants could apply through the SBA via an online portal and application. The loan application required the applicant to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain funds. The application required the applicant to provide information about the business, such as the number of its employees and its gross revenues for the 12-month period prior to the date of the disaster, among other information.

7. Applicants were required to electronically certify that the information provided in their applications was true and accurate, and applicants were warned that any false statement or misrepresentation to the SBA may result in sanctions, including criminal penalties.

The Paycheck Protection Program

8. The CARES Act also authorized funds for forgivable loans to small businesses for job

INDICTMENT                                    2

retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

9. In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application, signed by an authorized representative. The application required the business (through its representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the loan, including that the business was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. In the application, the business was required to state its average monthly payroll expenses and its number of employees, among other things. These figures were used to calculate the amount of money the small business was eligible to receive.

10. Businesses applying for a PPP loan were also required to provide documentation showing their payroll expenses and that they were in business as of February 15, 2020, and list in their application a North American Industry Classification System ("NAICS") code. NAICS was the standard used by federal statistical agencies in classifying business establishments for the purpose of collecting, analyzing, and publishing statistical data related to the U.S. business economy.

11. PPP loan proceeds were required to be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. In the PPP loan application, the applicant was required to check a box indicating the purpose of the loan and certify that the funds would be used in an authorized manner. PPP loan proceeds were not permitted to be used by the borrowers to purchase, among other things, personal residences or real estate.

12. In completing a loan application, applicants were required to place their initials on a line next to the statement:

> I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than

INDICTMENT                                3

$5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

13. A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender would fund the loan using its own monies, which were guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

14. Lender 1 was an SBA-licensed lender located in New Jersey. In 2021, Lender 1 was a third-party participating lender in the PPP.

15. Lending Partner 1 was a third-party lending partner that connected businesses in search of loans and lenders. Lending Partner 1 was headquartered in Lehi, Utah.

16. Company 1 was a company that offered remote document signature and management services. Company 1 was headquartered in San Francisco, California.

## The Scheme to Defraud

17. Beginning in or about January 2021 and continuing until at least in or about September 2021, in the Northern District of California and elsewhere, the defendant, LUKE BRUGNARA, devised a scheme and artifice to defraud the United States, through the SBA, Lending Partner 1, and Lender 1, by filing materially false and fraudulent applications for EIDL and PPP funds.

## Purpose of the Scheme

18. The purpose of the scheme was for BRUGNARA to obtain money and property from the EIDL and PPP loan programs by means of materially false and fraudulent pretenses, representations, and promises.

## Manner and Means

EIDL Applications

19. On or about January 15, 2021, BRUGNARA electronically submitted two EIDL applications in his own name on behalf of Brugnara Corporation. As BRUGNARA knew at the time he submitted each application, they contained false representations that were intended to influence the SBA to release EIDL funds to which BRUGNARA was not entitled.

INDICTMENT                                4

20. In the first application (application number ending 1218), BRUGNARA falsely stated that Brugnara Corporation had four employees as of January 31, 2020, and that the company's gross revenues for the twelve-month period prior to that date were $13,750,000. Based on the information BRUGNARA reported in this application, the application would have generated a loan up to $150,000. The SBA denied this application.

21. Approximately 20 minutes after submitting the first application, BRUGNARA submitted a second application (application number ending 1806). In the second application, BRUGNARA falsely stated that Brugnara Corporation had four employees as of January 31, 2020, and that the company's gross revenues for the twelve-month period prior to that date were $13,750,000. Based on the information BRUGNARA reported in this application, the application would have generated a loan up to $150,000. The SBA denied this application.

PPP Applications

22. In or about February 2021, BRUGNARA electronically submitted to Lending Partner 1 a PPP application in the name of Brugnara Corporation. In the application, BRUGNARA falsely represented that:

    a. Brugnara Corporation had 24 employees, had an average monthly payroll of $200,000, and was in operation on February 15, 2020;

    b. K.B., an individual, owned 100% of Brugnara Corporation; and

    c. the loan would be used to cover payroll.

23. In addition to making these false representations, BRUGNARA listed a NAICS code that falsely described Brugnara Corporation's business as commercial air, rail, and water transportation equipment rental and leasing.

24. In order to win approval of the PPP application, and in furtherance of his scheme to defraud, between about February 2021 and April 2021, BRUGNARA exchanged text messages and emails, had recorded telephone calls, and left recorded voicemails with Lending Partner 1. Based on BRUGNARA's false and misleading statements and representations, Lender 1 disbursed approximately $422,500 to BRUGNARA.

25. In or about May 2021, BRUGNARA electronically submitted to Lending Partner 1 a

INDICTMENT                                             5

second draw PPP application in the name of Brugnara Corporation.  In the application, BRUGNARA falsely represented that:

    a.   Brugnara Corporation had 24 employees, had an average monthly payroll of $199,999.92, and was in operation on February 15, 2020;

    b.   K.B., an individual, owned 100% of Brugnara Corporation; and

    c.   the loan would be used to cover payroll.

26.    In addition to making these false representations, BRUGNARA listed a NAICS code that falsely described Brugnara Corporation's business as commercial air, rail, and water transportation equipment rental and leasing.

27.    In order to win approval of the second PPP application, and in furtherance of his scheme to defraud, between about May 2021 and July 2021, BRUGNARA exchanged text messages and emails, had recorded telephone calls, and left recorded voicemails with Lending Partner 1.  The second draw PPP application was denied.

<u>COUNTS ONE THROUGH NINE</u>:  (18 U.S.C. § 1343 – Wire Fraud)

28.    Paragraphs 1 through 27 of this Indictment are re-alleged and incorporated as if fully set forth here.

29.    Beginning in or about January 2021, and continuing through in or about September 2021, in the Northern District of California and elsewhere, the defendant,

LUKE BRUGNARA,

knowingly and with the intent to defraud participated in, devised, and intended to devise a scheme and artifice to defraud as to a material matter, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by means of omission and concealment of material facts.

<u>Execution of the Scheme</u>

30.    On or about the dates set forth in the separate counts below, in the Northern District of California and elsewhere, for the purpose of executing the aforementioned scheme and artifice to defraud, and attempting to do so, the defendant,

LUKE BRUGNARA,

INDICTMENT                                  6

did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of a wire communication, certain writings, signs, signals, pictures, and sounds, specifically, the following interstate wire and email communications, among other things:

| COUNT | DATE | INTERSTATE WIRE TRANSMISSION |
|---|---|---|
| One | 1/15/2021 | 2:29 p.m. submission of an EIDL loan application (application number ending 1218) to SBA's server in Iowa |
| Two | 1/15/2021 | 2:49 p.m. submission of an EIDL loan application (application number ending 1806) to SBA's server in Iowa |
| Three | 3/9/2021 | 5:16 p.m. email from lukebrugnara0@XXXXX.XXX to Lending Partner 1 providing the SBA loan approval number and asking when the PPP proceeds would be received |
| Four | 3/23/2021 | 11:08 a.m. email from lukebrugnara0@XXXXX.XXX to Lending Partner 1 confirming that closing items had been provided and stating that funding was needed immediately |
| Five | 4/1/2021 | 9:49 a.m. email from lukebrugnara0@XXXXX.XXX to Lending Partner 1 requesting loan documents from Company 1 |
| Six | 4/2/2021 | 11:29 a.m. email from lukebrugnara0@XXXXX.XXX to Lending Partner 1 stating he has not received Company 1 documents for PPP loan and requesting a call or text |
| Seven | 4/13/2021 | 10:16 a.m. email from lukebrugnara0@XXXXX.XXX to Lending Partner 1 requesting that Lending Partner 1 call Lender 1 to assist in obtaining PPP funds |
| Eight | 4/13/2021 | 10:30 a.m. email from lukebrugnara0@XXXXX.XXX to Lending Partner 1 stating that he has not yet received PPP funds and requesting a receipt or tracking number to locate funds |
| Nine | 4/15/2021 | 9:36 p.m. email from lukebrugnara0@XXXXX.XXX to Lending Partner 1 stating that Brugnara Corporation had not received its PPP funds and making a "FORMAL LEGAL DEMAND FOR [LENDER 1] TO IMMEDIATELY WIRE BRUGNARA CORPORATION'S PPP LOAN FUNDS TO BRUGNARA CORPORATION'S WELLS FARGO BANK ACCOUNT" |

All in violation of Title 18, United States Code, Sections 1343.

//

INDICTMENT                                         7

COUNTS TEN THROUGH TWELVE:   (18 U.S.C. § 1957 – Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity)

31. Paragraphs 1 through 30 of this Indictment are re-alleged and incorporated as if fully set forth here.

32. Among other transactions, on or about the dates set forth in the separate counts below, in the Northern District of California and elsewhere, the defendant,

LUKE BRUGNARA,

did knowingly engage in each of the following monetary transactions by, through, and to a financial institution, in and affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such funds having been derived from the specified unlawful activity of wire fraud, in violation of 18 U.S.C. § 1343:

| COUNT | DATE | MONETARY TRANSACTION |
|---|---|---|
| Ten | 4/21/2021 | $310,000 transfer, of which more than $10,000 was criminally derived property, from Wells Fargo business account in the name of Brugnara Corporation numbered ending 40001 to Wells Fargo consumer account in the name of Luke Brugnara numbered ending 39896 |
| Eleven | 4/21/2021 | Purchase of $58,000 cashier's check, of which more than $10,000 was criminally derived property, from Wells Fargo business account in the name of Brugnara Corporation numbered ending 40001 |
| Twelve | 4/21/2021 | $310,000 transfer, of which more than $10,000 was criminally derived property, from Wells Fargo consumer account in the name of Luke Brugnara numbered ending 39896 to Old Republic Title Company escrow account numbered ending 47353 |

All in violation of Title 18, United States Code, Section 1957.

FORFEITURE ALLEGATION:   (18 U.S.C. §§ 981(a)(1)(A), 982(a)(1) and 28 U.S.C. § 2461(c))

The allegations contained in this Indictment are re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), and 982(a)(1), and 28 U.S.C. § 2461(c).

Upon conviction of any of the wire fraud offenses in violation of Title 18, United States Code, Section 1343, set forth in Counts One through Nine of this Indictment, the defendant,

LUKE BRUGNARA,

shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Upon conviction of any of the offenses involving engaging in monetary transactions in property derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957, the defendant,

LUKE BRUGNARA,

shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1), and 28 U.S.C. § 2461(c).

If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

//
//
//
//
//
//
//
//
//

All pursuant to Title 18, United States Code, Section 981(a)(1)(A), Title 18, United States Code, Section 982(a)(1), Title 28, United States Code, Section 2461(c), and Federal Rule of Criminal Procedure 32.2.

DATED: May 21, 2024                                          A TRUE BILL.

                                                      /s/
                                      FOREPERSON

ISMAIL J. RAMSEY
United States Attorney

*/S/ Ryan Arash Rezaei*
RYAN ARASH REZAEI
Assistant United States Attorney

INDICTMENT                                          10