ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

RYAN ARASH REZAEI (CABN 285133)
ALEXANDRA SHEPARD (CABN 205143)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    ryan.rezaei@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 24-CR-277 MMC |
| Plaintiff, | UNITED STATES' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO THE DEFENDANT'S ORAL MOTION TO REVOKE MAGISTRATE'S DETENTION ORDER |
| v. | |
| LUKE BRUGNARA, | |
| Defendant. | |

The United States submits this memorandum in light of the hearings held on July 17 and 31, 2024, relating to the defendant's oral motion to revoke the magistrate's order detaining him pending trial. *See* Dkts. 27 and 28 (minute entries on defendant's motion to revoke order of detention).

The United States maintains its position that the defendant should be detained pending trial based on the factors listed in 18 U.S.C. § 3142(g). Among the factors the Court must consider is the defendant's "record concerning appearance at court proceedings." *See* 18 U.S.C. § 3142(g)(3)(A). And in that regard, the defendant's record is abysmal. He has fled federal supervision in one form or another on <u>four</u> separate occasions, each time requiring the diversion of law enforcement resources to find him. The defendant was actually convicted of escape at trial, after infamously running from the federal

GOVERNMENT'S SUPPLEMENTAL BRIEF
24-CR-277 MMC

1

courthouse. Last year, Judge Alsup found that the defendant absconded from supervision shortly before he was to be sentenced for violations of his supervised release. Then, just months ago, the Bureau of Prisons filed two escape notices after the defendant arrived at the halfway house to serve the remainder of his federal sentence. There is no reason to think this time will be any different. The Court said it best at one of the recent hearings: when things do not go his way, the defendant takes matters into his own hands. It's only a matter of time before something in this case does not go the defendant's way and he takes matters into his own hands. No ankle monitor is going to change that.

The United States appreciates the Court's sentiments about how things might be easier if the defendant was released. The United States had to consider that very question when it moved for the defendant's detention and when it decided to charge the defendant in the first place. Things would have been easier if the United States did neither of those things. But just because it's easier doesn't make it right. The United States felt it was right to charge the defendant and move for detention and so it did so, despite knowing how difficult things might prove to be.

The last thing the Court should consider here is release. And not just because of the defendant's history of escape and non-appearance, which favors detention. The Court must also consider the message it sends to both this defendant and other defendants if it orders the defendant's release: behave poorly and make life as difficult as possible for everyone around you—for the Court, the Marshals, jail personnel—and you will be rewarded with release. That is the opposite of the message the Court should be sending to this defendant and to others.

On the matter of detention, Judge Hixson got it right: the defendant should be detained pending trial. And if the defendant feels Judge Hixson got it wrong, the Court can give him an opportunity to prove it while he's in custody. Let him prove that he can behave himself while in custody and let him do so for a not-insignificant period. And if he does that, the Court could then consider the changed circumstances that might justify the defendant's release. The United States is skeptical that he will be able to contain himself; the defendant's misbehavior in the short amount of time since he returned to California in May 2024 has resulted in two escape notices and his removal from Santa Rita Jail and transfer to San Francisco County Jail. But under this approach, the defendant is given a chance. The ball is in his court.

The government's proposed approach—detention until the defendant demonstrates that his behavior has actually changed—strikes a balance between the Court's and the parties' collective interest in moving this case along expeditiously and the government's concern that the defendant will abscond, for the fifth time.

DATED: August 5, 2024

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

*/S/ RYAN ARASH REZAEI*
RYAN ARASH REZAEI
Assistant United States Attorney