1  CRAIG H. MISSAKIAN (CABN 125202)
   United States Attorney
2
   JEFF MITCHELL (CABN 236225)
3  Chief, Criminal Division

4  ASEEM PADUKONE (CABN 298812)
   MAYA KARWANDE (CABN 295554)
5  Assistant United States Attorneys

6      450 Golden Gate Avenue, Box 36055
       San Francisco, California 94102-3495
7      Telephone: (415) 436-7200
       FAX: (415) 436-7234
8      aseem.padukone@usdoj.gov
       Maya.karwande@usdoj.gov
9  Attorneys for United States of America

10                       UNITED STATES DISTRICT COURT

11                      NORTHERN DISTRICT OF CALIFORNIA

12                             SAN FRANCISCO DIVISION

13
   UNITED STATES OF AMERICA,           ) CASE NO. 3:24-cr-00277 MMC
14                                     )
            Plaintiff,                 ) UNITED STATES' MOTION TO REVOKE
15                                     ) DEFENDANT'S BOND
       v.                              )
16                                     )
   LUKE BRUGNARA,                      )
17                                     )
            Defendant.                 )
18 _____)

19
   I.    INTRODUCTION
20
          Defendant Luke Brugnara has had a nearly two-decade entanglement with this Court following a
21
   string of crimes and supervision violations. In his current criminal case, the Court gave Brugnara the
22
   benefit of the doubt and allowed him to be out of custody on bond while trial is pending. With the
23
   benefit of hindsight, it is plainly apparent that Brugnara cannot remain out of custody. United States
24
   Pretrial Services agrees.
25
          His arrest in Daly City last week for being a felon-in-possession of a firearm and threatening to
26
   shoot people on sight – just one day after this Court warned him about engaging in hostile or aggressive
27
   interactions with others – establish that there are no conditions of release that adequately mitigate
28

1  Brugnara's danger to the community.  His history of flight when trial and sentencing approach further
2  demonstrates that he remains a serious risk of flight, especially at a time where he has not heeded this
3  Court's warnings about his behavior.  Brugnara's bond should be revoked and he should be promptly
4  detained pending trial, which is scheduled to begin just a few months from now on June 1, 2026.

5  **II.    BACKGROUND**

6      **A.    2008-2015: Brugnara's prior convictions in this district**

7      In 2008, Brugnara was charged in this district with two counts of making false statements and
8  four counts of violating the Endangered Species Act.  No. 8-CR-236-MMC, Doc. 1 (indictment).  He
9  pled guilty to all counts on January 26, 2010.  *Id.*, Doc. 54 (guilty plea application and order accepting
10 guilty plea).  Brugnara received a total prison term of 15 months.  *Id.*, Doc. 101 (judgment in a criminal
11 case).

12     In a separate 2008 case, Brugnara was charged in this district with three counts of filing false tax
13 returns.  Case No. 8-CR-222-WHA, Doc. 1 (indictment).  In 2010, the grand jury returned a superseding
14 indictment charging Brugnara with three counts of filing a false tax return and one count of obstructing
15 internal revenue laws.  *Id.*, Doc. 68 (superseding indictment).  Brugnara pled guilty to all four counts.
16 *Id.*, Doc. 70 (guilty plea application and order accepting guilty plea).  The Honorable Judge William
17 Alsup sentenced the defendant to a total prison term of 30 months.  *Id.*, Doc. 134 (amended judgment in
18 a criminal case).

19     In 2015, the grand jury returned a superseding indictment charging Brugnara with four counts of
20 wire fraud, one count of mail fraud, two counts of false declaration before court, one count of escape,
21 and one count of contempt of court.  Case No. 14-CR-306, Doc. 348.  The escape charge arose out of
22 Brugnara's infamous escape from the San Francisco federal courthouse while meeting with his attorney
23 to prepare for his trial.  *See id.*, Doc. 317 (Judge Alsup's issuance of bench warrant based on the
24 defendant's "escape[] from the federal building").  Brugnara was acquitted on two wire fraud counts but
25 convicted on all other counts, including the two counts of false declaration before court and escape.
26 Case No. 14-CR-306, Doc. 625 (criminal trial minutes).  Judge Alsup sentenced Brugnara to a total
27 prison term of 84 months.  *Id.*, Doc. 787 (judgment in a criminal case).
28

### B. 2021: Brugnara's New Fraud Scheme

In 2021, following his release from federal prison and while on supervised release, Brugnara orchestrated a nine-month pandemic-related fraud scheme. *See* 24-CR-277-MMC, Doc. 1 (indictment). As alleged in the May 2024 indictment, in January 2021, Brugnara submitted two fraudulent loan applications under the Economic Injury Disaster Loan program. *Id.*, ¶¶ 19-21. He also submitted fraudulent loan applications under the Paycheck Protection Program. *Id.*, ¶¶ 22-27. Brugnara currently faces nine counts of wire fraud and three counts of money laundering as a result of this scheme. Doc. 1 (indictment). Yet he found himself facing other consequences even before this new indictment was returned.

### C. 2023: Judge Alsup revokes Brugnara's supervised release and sentences him to a 456-day prison term for, among other things, absconding from supervision

In 2023, Judge Alsup presided over Form 12 proceedings following allegations that Brugnara violated numerous conditions of supervised release, including being a felon-in-possession of a firearm. Case No. 14-CR-306-WHA, Doc. 1049 (second amended petition). The firearm in question was registered to his girlfriend, Yitong Wen, but was found in a storage locker with his DNA on the gun. Ultimately, Judge Alsup revoked Brugnara's supervised release and imposed a 456-day prison term. Judge Alsup ultimately returned the firearm to Wen, who was the registered owner of the firearm, but only after Brugnara was apprehended and back in custody. He delayed returning the gun because "[s]he allowed Mr. Brugnara to have access to that gun." *See* Padukone Decl. at Ex. A, 6:3-4 (Transcript of Proceeding 5/3/2023). Judge Alsup determined that Ms. Wen was Mr. Brugnara's girlfriend and that "she is complicit in the arrangement that he would have access to the gun." *Id*. at 6:18-20. He found that returning the gun to her would "pose a distinct public safety hazard. . . because of the high risk that it would wind up in the hands of Mr. Brugnara and, therefore, be used to hurt somebody because he is a dangerous – he has a very angry sense." *Id*. at 6:20-24.

#### 1. Brugnara flees before sentencing and is gone for approximately two months before being arrested

Judge Alsup set sentencing for March 14, 2023. Case No. 14-CR-306, Doc. 1081. Brugnara did not show up. Instead, Judge Alsup was forced to issue a warrant for Brugnara's arrest. *See id.*, Docs.

GOVERNMENT MOT. TO REVOKE BOND
3:24-cr-00277 MMC
3

1081 (minute entry) and 1082 (order issuing warrant of arrest for Brugnara's failure to appear in violation of 18 U.S.C. § 3146).

While a fugitive yet again, Brugnara sent an email to the clerk asking that Judge Alsup recuse himself. *See id.*, Doc. 1088 (Judge Alsup's notice explaining that the defendant, "now a fugitive from justice," sent the described email). Judge Alsup concluded the email was improper and ignored it. *See id.* On May 17, 2023, Brugnara was located and arrested. *See id.*, Doc. 1116.

### 2. Judge Alsup concludes a false filing was lodged with the clerk

On May 10, 2023, Judge Alsup issued a notice regarding a document relating to the case that was left with the Clerk's office two days earlier, on May 8. *See* Case No. 14-CR-306, Doc. 1093. In his notice, Judge Alsup wrote that the Court had reason to believe the document was not submitted by the Brugnara's counsel and asked Brugnara's counsel to (1) file a statement of whether or not she filed the document, and (2) state whether she signed the document and what she believes the origin of the document might be. *Id.*

Defense counsel filed her declaration as required. Doc. 1096. In it, she declared, among other things, that Brugnara has been a fugitive for approximately two months and that he has been in contact with her via telephone and emails. Doc. 1096, ¶¶ 2-3. Defense counsel declared that she has "repeatedly told [the defendant] to surrender." Doc. 1096, ¶ 3. Regarding the document, defense counsel declared, among other things, that the declaration that was signed by Brugnara and had several facts that defense counsel had deleted in the declaration she sent to him. Doc. 1096, ¶ 9.

Judge Alsup concluded that the document (a motion for recusal) was not filed by defense counsel but instead was filed by some unauthorized person. Doc. 1104.

### 3. Prior to sentencing on the Form 12, Brugnara asks to be released to attend his mother's funeral; Judge Alsup denies the request based on the defendant's absconding from supervision and refusal to obey court orders

On July 13, 2023, Brugnara filed a renewed motion for an order directing the U.S. Marshals to escort him to his mother's funeral. Case No. 14-CR-306, Doc. 1147. Judge Alsup denied that the motion. *See id.*, Doc. 1148. An excerpt of Judge Alsup's order on the motion follow:

> In other cases, the judge has allowed an inmate to be released from custody long enough to attend an important family event such as a funeral, but this order denies (again) defendant Luke Brugnara's request to do so. He is in custody awaiting sentencing.

> Twice before defendant has absconded from criminal proceedings in this Court and gone into hiding, never turning himself in but always having to be tracked down and caught by deputy marshals. The risk of another attempted flight and the attendant violence is too great.
>
> Defendant has a history of being noncompliant. He will *not* take orders, as illustrated as recently as Wednesday of this week when, at the hearing, he refused to obey court and counsel requests to behave and he interrupted the proceedings with his long diatribe. He was finally escorted out of the courtroom and into the holding cell by three deputies so that the hearing could finish. Many other prior similar disruption scenarios by him could be recounted, at least a dozen. Were he released with deputies to attend the funeral in question, it would take three deputies or more to control him. We do not have three deputies to spare.
>
> And, it would be a crowded funeral with confederates possibly present, none of whom would have gone through a security clearance; it would take even more deputies to guard against his escape or his being aided by a confederate.
>
> . . .
>
> Two family members (a brother and sister) swear under oath that the funeral would be cancelled if defendant were released to attend, so fearful of him they remain. Defendant would, they fear, terrorize the event with his disruptive and belligerent manner.

In early May 2024, Brugnara was transferred to an Oakland residential reentry center (RRC) to serve the remainder of his 456-day term. While there, the RCC filed two escape notices involving Brugnara. Brugnara was arrested six days after the second escape notice, on May 17, 2024, in a hotel room near San Francisco Airport with Yitong Wen in the room with him.

### III.   The Present: Brugnara is released pretrial, continues to threaten to kill people, and possesses a firearm

Brugnara first appeared in this case in June 2024. Though initially detained by the magistrate judge, the district court revoked the detention order in August 2024 and ordered that Brugnara be released with conditions. His conditions required, among other things, that he must not commit any federal, state, or local crime, that he must not possess any firearm, and that he must participate in mental health treatment as directed by Pretrial Services. Brugnara has failed to abide by any of these conditions.

On January 15, 2026, Brugnara's sister filed a petition in San Francisco Superior Court seeking a protective order against Brugnara. *See* Padukone Decl, Ex. 2 (January 15, 2026 Declaration of K.

1  Brugnara).  In the declaration, she detailed threats that he has made against her, including on December
2  17, 2025 by telling her, "You are not going to like how this ends and I don't mean in court…"  *See id.* at
3  ¶ 33.  As he has done before in federal court, Brugnara lost his temper in the courtroom, and continued
4  his verbal assault in a threatening manner in the parking lot, and even tried to prevent the elevator doors
5  from closing so that he could continue his harassment.  *Id.* at ¶ 34.

6  On January 20, 2026, this Court held a bond hearing to admonish Brugnara for his alleged
7  inappropriate behavior when conversing with a mental health service provider who had contacted him to
8  schedule services for him.  *See* 24-CR-277-MMC, Doc. 98.  The admonishment had no effect, and in
9  fact, Brugnara's misconduct intensified.

10  The next day, on January 21, 2026, Brugnara was arrested in Daly City for making threats with
11  the intent to terrorize (in violation of California Penal Code 422(a)) and being a felon-in-possession of a
12  firearm (in violation of California Penal Code 29800(A)(1)).  *See* Padukone Decl., Ex. C (DCPD
13  Report).  Brugnara was with his girlfriend, Yitong Wen, at the time.  *See id.* at 12.  A couple was
14  walking their dog along a fence line at Thornton State Beach when they noticed an aggressive sign
15  warning: "Private Property No Trespassing Owner Armed with 9MM Gun" and "Trespassor(s) will be
16  shot."  *See id.* at p. 5, 8.



1    The fence had been erected by Brugnara, and he has claimed he had a right to do so but denied putting up that sign.  *See* "Notorious SF art fraudster linked to fence blocking popular Bay Area beach" *available at* https://www.sfgate.com/local/article/sf-art-fraudster-beach-21320739.php.  At approximately 5:28 PM, Brugnara approached the couple and said, "If you get near the fence I will shoot and kill you," and "I have a gun and if you come on my property I'll shoot you."  *See* Padukone Decl., Ex. C at p. 2, 5.  At the time, the woman was approximately three feet from the fence.  *Id.* at p. 5.  The man reported feeling unsafe and that Brugnara "seemed too excited about putting a hole in someone."  *Id.*  Brugnara further threatened the couple that "he was a billionaire and could do what he wanted."  *Id.*  Wen was also present and threatened the couple, stating "Come try me.  I'd love to see you try."  *Id.*  The couple left the area in fear.  *Id.*

   The victims reported these threats and the Daly City police.  Approximately 30 minutes later, at 5:59 PM, Daly City police made a traffic enforcement stop on a vehicle leaving the Thorton Beach property.  Police found Wen driving and Brugnara in the back seat. In the front seat of the car was a tote bag that contained a cased 9mm Glock firearm – the same model that Brugnara's sign had threatened – two Glock magazines, and nine rounds of 9mm ammunition. *See* Padukone Decl., Ex. C at p. 13. The gun case was in plain view.  *See id*.  It also was within Brugnara's reach.  *See id*.  And it was also the *same gun* that Judge Alsup found that Brugnara had previously illegally possessed in May 2023.  *See id*. (Serial number BTAV851).

   The victim positively identified both Brugnara and Wen.  *See id*. at p. 16.  Brugnara then lied to the police, by saying that he did not threaten anyone, and that he did not possess or have knowledge of a firearm.  *Id*. at 6. Brugnara was then arrested for making criminal threats and being a felon-in-possession of a firearm. *Id*. at 1.

## IV.    LEGAL STANDARD AND ARGUMENT

   A court must enter an order of revocation and detention if the judicial officer concludes that there is probable cause that the defendant committed a federal, state, or local crime while on release and there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or the person is unlikely to abide by any condition or combination of conditions of release.  *See* 18 U.S.C. § 3148.  A rebuttable presumption

arises that no combination of conditions exists to assure that the defendant will not pose a danger to the community. *Id*.

Here, there is probable cause to believe that Brugnara once again violated the law while on pretrial release. Brugnara was arrested after multiple civilian witnesses reported to law enforcement Brugnara's threats to shoot trespassers with a gun and one victim positively identified him and Yitong Wen. Not only did Brugnara threaten to use a gun to "shoot on sight," he was found within reach of a firearm that led to his supervised release revocation, which is in itself another crime. Just one day earlier, this Court reminded Brugnara that he could not be abusive or threatening towards other people. Brugnara ignored that directive and the next day he was threatening to shoot people on sight and was found in a car with his girlfriend and the same gun he was found to have constructively possessed just a few years earlier and led to a lengthy prison sentence.

This, coupled with his sibling's declaration filed in state court about his threats and erratic behavior, make clear that he remains a danger to the community and must be detained. He cannot rebut the presumption that no combination of conditions can assure the safety of the community.

Brugnara's recent behavior, coupled with his history of flight and failing to appear particularly when trial or sentencing is approaching, further suggests that he will not follow through on showing up for his court hearings through the pendency of this case. As consequences approach, his incentive to flee will increase.

For these reasons, the Court should revoke Brugnara's bond and order him detained immediately.

DATED: February 3, 2026                         Respectfully submitted,

                                                CRAIG H. MISSAKIAN
                                                United States Attorney


                                                _____/s/_____
                                                ASEEM PADUKONE
                                                MAYA KARWANDE
                                                Assistant United States Attorneys