# EXHIBIT A

**Pages 1 - 10**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

```
UNITED STATES OF AMERICA,     )
                              )
          Plaintiff,          )
                              )
  VS.                         )   NO. CR 14-00306 WHA
                              )
LUKE BRUGNARA,                )
                              )
          Defendant.          )
_____)
```

San Francisco, California
Wednesday, May 3, 2023

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
        ISMAIL J. RAMSEY
        UNITED STATES ATTORNEY
        450 Golden Gate Avenue, 11th Floor
        San Francisco, California 94102
  **BY:  GEORGE O. HAGEMAN**
      **ASSISTANT UNITED STATES ATTORNEY**

For Movant Yitong Wen:
        ISMAIL J. RAMSEY
        UNITED STATES ATTORNEY
        450 Golden GAte Avenue, 11th Floor
        San Francisco, California 94102
  **BY:  PATRICK D. ROBBINS**
      **ASSISTANT UNITED STATES ATTORNEY**

Also Present:          **Jennifer Hutchings, U.S. Probation**

REPORTED BY:  Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
              CSR No. 7445, Official United States Reporter

|   |   |
|---|---|
| 1 | **Wednesday - May 3, 2023**                                              **10:06 a.m.** |

2                            **P R O C E E D I N G S**

3                                   ---o0o---

4                            (Defendant not present.)

5          **THE CLERK:** Calling Criminal Action 14-306,

6   United States of America vs. Luke Brugnara.

7          Counsel, please approach the podium and state your

8   appearances for the record, beginning with counsel for

9   the Government.

10         **MR. HAGEMAN:** Good morning, Your Honor. George

11  Hageman for the United States.

12         **THE COURT:** Okay.

13         **MR. ROBBINS:** Good morning, Your Honor. Patrick

14  Robbins. I'm here for Ms. Wen.

15         **THE COURT:** Okay. Good morning.

16         **PROBATION OFFICER HUTCHINGS:** Good morning,

17  Your Honor. Jennifer Hutchings on behalf of Federal Probation.

18         **THE COURT:** All right. Mr. Robbins, your motion --

19  you can take your mask off, if you wish, so we can hear you

20  better.

21         **MR. ROBBINS:** Thank you. I appreciate that,

22  Your Honor.

23         And let me say thank you for accommodating my

24  scheduling request to appear today.

25         I don't have anything specific to add to my papers,

```
 1  which I hope the Court saw.
 2          I just wanted to point out, I was looking this morning
 3  at what the Government filed a year ago.  And when they wanted
 4  to keep the Glock a year ago, they explained that they needed
 5  ATF to test for fingerprints and DNA to see if they wanted to
 6  bring the case and that they would make a prompt determination,
 7  which obviously they did.  And until that time, the Government
 8  should get latitude.
 9          And as I think I explained in my papers, that latitude
10  should come to an end.  The evidentiary portion of the
11  proceedings are over.
12          And that's all.  Thank you, Your Honor.
13          THE COURT:  Okay.  Thank you for that brief argument.
14          Your turn.
15          MR. HAGEMAN:  Thank you, Your Honor.
16          The Gladding case that is cited in both of our
17  motions, I believe, all it does is it says that once the
18  evidentiary purpose for the property has ended, the burden
19  shifts to the Government, and then the Government can still
20  retain the property if there's a legitimate reason for doing
21  so.
22          I would argue, in the first instance, that because of
23  this pending appeal of the motion for reconsideration, there is
24  still some evidentiary purpose.  But even assuming that there
25  is no evidentiary purpose, the Government has put forward a
```

```
 1  legitimate reason for retaining the property, and that is the
 2  safety concern.
 3          As stated in the papers and as the Court is well
 4  aware, Mr. Brugnara is still a fugitive.  He is still out
 5  there.  He has shown repeatedly that he is angry at
 6  Ms. Hutchings, the probation officer, for example; angry at
 7  people who have provided evidence indirectly, like family
 8  members, in support of this case.
 9          And so we have an angry man who is out there, and the
10  person that is seeking to get the gun back is the woman who was
11  the technical owner of the firearm back in October 2022 when
12  the Court determined that Mr. Brugnara was, nevertheless, in
13  possession of the firearm, even though Ms. Wen was the
14  technical owner.
15          And so looking at the *Henderson* case, which states
16  that if and only if the Court is confident that the felon does
17  not -- would not be able to get possession of the gun, if and
18  only if that is the case, the gun should go back.
19          I think, here, we have the same woman who had the gun,
20  who was the technical owner before and, yet, Mr. Brugnara
21  possessed the gun; that same woman is now asking for the gun
22  back.  And so the same concerns apply, the same safety
23  concerns.  And so that is our legitimate reason, and that's why
24  we would object to Ms. Wen's motion as premature at this time.
25          **MR. ROBBINS:**  May I respond to that, Your Honor?
```

|   |   |
|---|---|
| 1 | **THE COURT:** Sure. |
| 2 | **MR. ROBBINS:** Ms. Wen is not the technical owner. |
| 3 | She's the owner. And she is free to go purchase a gun from a |
| 4 | firearm seller tomorrow, today, and we'd be in no different |
| 5 | position. |
| 6 | There's not a free-floating safety principle that I |
| 7 | can find in the cases. |
| 8 | The *Henderson* case, the Supreme Court was dealing with |
| 9 | a defendant who wanted to command the disposition of his |
| 10 | firearms. And the comments the Court made in that context |
| 11 | applied to that context, not to a third-party owner. |
| 12 | We're not in a Pretrial Services hearing, and Ms. Wen |
| 13 | is not a criminal defendant. She's the lawful owner of the |
| 14 | firearm. |
| 15 | I would suggest to the Court there is not a legal |
| 16 | basis to withhold the gun, the return of the gun, based on |
| 17 | safety concerns relating to a criminal defendant. |
| 18 | **THE COURT:** All right. Here's the ruling. |
| 19 | First, I want to thank Mr. Robbins for his excellent |
| 20 | representation of Ms. Wen in arguing this and maybe even |
| 21 | arguing it on appeal. |
| 22 | I think that leads to my second point, which is I do |
| 23 | see an important Second Amendment issue here because the right |
| 24 | of a citizen like Ms. Wen to have a firearm is enshrined in our |
| 25 | Second Amendment. So that's an important consideration. |

1        Nevertheless, the Court feels it's wrong to turn the
2   gun over to her at this time, even though she is the registered
3   owner.  Here is why:  She allowed Mr. Brugnara to have access
4   to that gun.  He is a convicted felon many times over.
5        Now, we had a whole evidentiary hearing on this; and
6   the Court found that he did, in fact, have possession and
7   control over that weapon.  Even though it was locked up in the
8   public locker down in Colma, nevertheless, he had access to it.
9   It was a long evidentiary hearing, and I'm not going to repeat
10  it all.
11       Ms. Wen was complicit in that arrangement.  She's the
12  girlfriend of Mr. Brugnara, at least as far as I can tell.
13  That's what the record to date shows.
14       And before he fled as a fugitive from justice,
15  Mr. Brugnara would sometimes come in here and whisper in her
16  ear what she was supposed to say.  I saw it myself at least
17  twice.
18       So she is complicit with Mr. Brugnara and complicit in
19  the arrangement that he would have access to the gun, in
20  the Court's findings.  And therefore, it would be -- would pose
21  a distinct public safety hazard for that gun to be returned to
22  her because of the high risk that it would wind up in the hands
23  of Mr. Brugnara and, therefore, be used to hurt somebody,
24  because he is a dangerous -- he has a very angry sense.  I
25  don't know -- I won't go so far as to say that he would use

1  that against somebody.  I hope that he would not.  But he is an
2  unstable fugitive from justice, and I've seen him for many
3  years now.  I just cannot imagine allowing him to have a gun,
4  even apart from the fact that he's a convicted felon.  So that
5  is -- it's to protect the public.
6          Now, Mr. Robbins makes an excellent point.  Well, she
7  can go buy a new gun.  I guess that's right.  I'm not so sure
8  that that's right.  I would hope that the investigation done by
9  the seller would reveal that she is the girlfriend of a
10 convicted felon and that they would find the records showing
11 what happened in this case.
12         But even if it's true that she could go and buy a new
13 gun, yes, we are running the risk that that gun would wind up
14 in his hands too; but I'm not going to let that -- I just
15 cannot see the U.S. District Court being party to an
16 arrangement whereby a convicted felon, who is a fugitive from
17 justice -- and his whereabouts even today we don't know, but
18 she may know.
19         And I hope, Mr. Robbins, that you counsel her about
20 her own liability if it turns out she knows where he is and has
21 not informed the authorities.  I would have that discussion
22 with her if I were you.
23         Anyway, that's my ruling.  Safety.  Safety comes
24 first.  And the motion is denied on account of the need to
25 protect the public from further violence.

1           I would not -- I think this is an important issue.  I
2  would not blame you if you wanted to take an appeal to
3  the Court of Appeals because I do think the Second Amendment
4  deserves some consideration here that I have considered; but
5  how that plays in this particular situation -- I'm not doing it
6  on the basis of evidentiary value.  I think that we've already
7  covered that ground.  I'm doing it on the basis of public
8  safety and the close relationship between the registered owner
9  of the gun and a felon, convicted felon many times over, who
10 has fled from the -- fled from justice.
11          Okay.
12          **MR. ROBBINS:**  Could I just --
13          **THE COURT:**  Yes, sir.
14          **MR. ROBBINS:**  Could I make a record on a couple of
15 things, Your Honor?
16          **THE COURT:**  Well, I don't know.  Go ahead, say what
17 you want to say.
18          **MR. ROBBINS:**  Well --
19          **THE COURT:**  But it's a little unfair to the judge to
20 lard the record after the fact.
21          **MR. ROBBINS:**  Well, and I'm happy not to respond, and
22 I recognize the Court has ruled.
23          What I take issue with the most is the Court's
24 statement that Ms. Wen somehow allowed Mr. Brugnara to have
25 access to the gun.

```
 1              I wasn't at the hearing and I didn't hear all the
 2   evidence, but I read Your Honor's oral decision.  And my
 3   understanding is there's no evidence of Ms. Wen's conduct, none
 4   whatsoever, in the record.
 5              THE COURT:  That's wrong.  That's wrong.
 6              MR. ROBBINS:  Okay.
 7              THE COURT:  She allowed -- she -- it's a reasonable
 8   inference that she knew good and well that that storage locker
 9   had the gun in there and that that gun was -- he had access to
10   it any time he wanted.  So I disagree with your
11   characterization.  That's not true.
12              I think you're -- see, Ms. Wen is getting information
13   from a fugitive from justice, and she's feeding what he's
14   saying to her to you.  That's my take on it.
15              MR. ROBBINS:  Understood, Your Honor.
16              And, second, I don't mean to repeat myself, but I am
17   not aware of any case that allows the Court to deny a Rule 41
18   motion based on safety.  And that may well be in a --
19              THE COURT:  That's where you come in.  And maybe you
20   will make the first ruling in the Court of Appeals on that
21   point.
22              Look, I'm just doing what I think is right for the
23   system.  I'm not -- I don't have a case myself.  I'm saying it
24   should be the law.
25              MR. ROBBINS:  And, finally -- and this is the last
```

```
 1   point that I'll make -- there is a procedural mechanism for
 2   the Government to avail itself of.  It's a forfeiture action.
 3   And they haven't done it.  And I would suggest the reason they
 4   haven't done it is there's a relatively clear Ninth Circuit
 5   case that I think suggests it would be an excessive fine or
 6   penalty, based on the Ninth Circuit's ruling, to forfeit that
 7   firearm.
 8           But that's not what's happening here.  Ms. Wen is in
 9   procedural limbo.  Her property was taken and used.  The use is
10   finished.  The Government's need for it is finished.
11           I understand the Court has ruled.
12           **THE COURT:**  Thank you.  Good.
13           Good luck to both sides.
14           **MR. HAGEMAN:**  Thank you, Your Honor.
15           **PROBATION OFFICER HUTCHINGS:**  Thank you, Your Honor.
16                (Proceedings adjourned at 10:19 a.m.)
17                            ---o0o---
```

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Tuesday, September 5, 2023

*Ana Dub*

_____

Ana Dub, RMR, RDR, CRR, CCRR, CRG, CCG
CSR No. 7445, Official United States Reporter