# EXHIBIT B

PAUL J. SMOOT, SBN 160787
**LAW OFFICE OF PAUL J. SMOOT**
526 South Humboldt
San Mateo, California 94402
Telephone (650) 548-0900
Facsimile (650) 548-0901

Attorney for Respondents KRISTA M. BRUGNARA, individually and as Trustee of Victoria L. Brugnara Trust, and ERIC J. BRUGNARA, individually and as Trustee of Victoria L. Brugnara Trust

ELECTRONICALLY
**F I L E D**
Superior Court of California,
County of San Francisco

**01/15/2026**
**Clerk of the Court**
BY: MICHAEL RAYRAY
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

PROBATE DIVISION

| | |
|---|---|
| In the Matter of:<br><br>ESTATE OF VICTORIA L. BRUGNARA | Case No. PTR-25-625177<br><br>**DECLARATION OF KRISTA M. BRUGNARA IN SUPPORT OF RESPONDENTS' MOTION FOR PROTECTIVE ORDER**<br><br>(Approved by Robert)<br><br>Date: March 19, 2026<br>Time: 9:00 a.m.<br>Dept: 204<br>Complaint Filed: May 8, 2025 |

I, Krista M. Brugnara, declare as follows:

1. I am a Trustee of Restatement of the Victoria L. Brugnara 1998 Trust ("Trust"). I became Trustee of the Restatement of the Victoria L. Brugnara 1998 Trust dated April 3, 2017, on July 2, 2023. I am also a Respondent in the above captioned matter in my capacity as a Trustee of the Trust and individually, as is my brother and co-Trustee Eric Brugnara. (collectively referred to as "Respondents").

2. I was formerly married and took the name Krista M. Davis. Since my divorce I have gone back to my maiden name, Krista M. Brugnara.

3. I make this declaration in support of Respondents' Motion for Protective Order in the above captioned action.

1
**DECLARATION OF KRISTA M. BRUGNARA IN SUPPORT OF
RESPONDENTS' MOTION FOR PROTECTIVE ORDER**

**Trustee of Restatement of the Victoria L. Brugnara 1998 Trust**

4. On July 2, 2023, Victoria L. Brugnara, my mother, ("mother") passed away.

5. I was not aware of the contents my mother's Trust until shortly before she passed away. Prior to my mother's passing she told me about the Trust because I was a Trustee. While I was aware of the existence of the Trust, I did not fully examine the Trust until after my mother passed away on July 2, 2023. I have served as co-Trustee of the Trust since July 2, 2023 and continue to serve in that capacity.

6. Soon after my mother's passing, I engaged counsel to understand our duties and obligations as a Trustees of the Trust. Upon examining the Trust with our attorney, I became aware of other iterations of my mother's Trust. As I understand it, our then counsel contacted our mother's Trust attorney, Kurt D. Huysentruyt, who forwarded the original 1998 trust and its 2004 Amendment to me. I have never met nor spoken to Mr. Huysentruyt before or after my mother's passing; nor has my brother, Eric Brugnara.

7. I understood my duties and obligations as Trustee of the Trust, one of which was to provide the statutory Notice to Beneficiary Pursuant to Probate Code § 16061.7 concerning the Restatement of the Victoria L. Brugnara 1998 Trust dated April 3, 2017. Additionally, in the regular course of my duties as Trustee of the Trust, I maintain the books and records of the Trust, including, lodging the correspondence, accountings, and all statutory notices required under the California Probate Code. As Trustee of the Trust, I have maintained and continue to maintain a standard recordkeeping system for all the Trust documents, as well as all required mailings, notices, and related proofs of service. It is the regular practice of the Trust to prepare, mail, and retain copies of each statutory notice required under Probate Code § 16061.7, together with the postal receipts and tracking confirmations showing the date and method of mailing.

8. On August 16, 2023, the statutory § 16061.7 notice was prepared under my direction and executed by the Trustees, Eric Brugnara and myself, on that date. The statutory § 16061.7 notice identified the identity of the Settlor, Trust, the date of its execution and restatement, the name, address and telephone number of the current trustees, *i.e.*, Eric Brugnara and myself, the address

of the physical location where the principal place of administration of the trust is located; and included the statutory warning required by § 16061.7(f) advising beneficiaries of their right to petition the court within 120 days under § 16061.8, as well as a copy of the Trust.

**Determination of Address for Petitioner Pursuant to PC §§ 1215(a)(1)(A), (a)(2), (a)(4)**

9. On April 3, 2023, I was informed Petitioner Luke Brugnara was a fugitive from justice having escaped from federal custody by his probation officer, Jennifer Hutchings. When I later spoke with Ms. Hutchins I was asked if I had heard from him at which point, I had not. I was told I needed to let her know if we did hear from him, so I shared the threatening and harassing voicemail he had left me on May 14, 2023. Prior to July 2, 2023, Ms. Hutchings contacted me and advised Petitioner had been captured and was back in federal custody. After July 2, 2023, I confirmed Petitioner was still in Federal Custody by using his Bureau of Prisons Inmate number.

10. On or about August 16, 2023, co-Trustee, Eric Brugnara, and I confirmed with our counsel the Notice must be sent to Petitioner's last known address pursuant to Probate Code §1215. I was aware the Petitioner was in federal prison, yet again based upon notice from Petitioner's probation officer. So when we needed to identify Petitioner's last known address to send him the Notice pursuant to Probate Code §1215, I was aware Petitioner was in federal prison. Petitioner's wife had previously filed for divorce so we had no other addresses for Petitioner other than the federal prison facility he was currently in at the time. With counsel, using the Bureau of Prison Inmate Index, we located Petitioner at Federal Correctional Institution in Dublin, California.

11. On August 17, 2023, I sent, via United States Postal Service Priority Mail with Tracking, the Notice to my brothers, Aleo Brugnara at his home in Daly City, California and Petitioner Luke Brugnara to the Federal Correctional Facility. For Petitioner we confirmed his location, address and inmate number per the Federal Bureau of Prisons Inmate locator: https://www.bop.gov/mobile/find_inmate/byname.jsp with our counsel. I followed the federal correctional facility instructions for addressing and mailing documents to Petitioner Luke Brugnara. I sent Petitioner Luke D. Brugnara in a sealed envelope, postage paid, addressed to his then known residence, via United States Postal Service Priority Mail - with tracking. I went to the United States Postal Service office at 3245 Geary Blvd., San Francisco, CA and requested Priority Mail with

3

1  tracking. I paid for the Priority Mail with tracking and received a receipt for mailing from USPS
2  employee from the USPS computer.

3  12.  On August 18, 2023 at 5:00 p.m., the Notice was delivered to my brother, Aleo Brugnara, to his
4  home in Daly City.

5  13.  On August 28, 2023, I received the Priority Mail "Returned to Sender" by the United States Postal
6  Service regarding Petitioner. I discovered that Petitioner had been moved to another federal prison.
7  I was advised that Petitioner was no longer in the federal prison in Dublin, California and had been
8  moved to a United States Penitentiary, Victorville.

9  14.  Again, I used the Bureau of Prisons Inmate Locator to identify and confirm Petitioner's then current
10  federal prison: https://www.bop.gov/mobile/find_inmate/byname.jsp, specifically, Petitioner was
11  then incarcerated in the high security United States Penitentiary - Victorville - its mailing address
12  is Adelanto, California.

13  15.  On August 30, 2023, I sent Petitioner Luke D. Brugnara in a sealed envelope, postage paid,
14  addressed to his then known residence, via United States Postal Service Priority - with tracking,
15  the Notice to the United States Penitentiary - Victorville. I followed the United States Penitentiary-
16  Victorville instructions for addressing and mailing documents to Petitioner Luke D. Brugnara as
17  follows:

18  LUKE D BRUGNARA, BOP Register Number: 12047-111
    USP Victorville
19  U.S. PENITENTIARY
    P.O. BOX 3900
20  ADELANTO, CA   92301

21  I then went to United States Postal Service at 821 Irving Street, San Francisco, California and
22  asked for Priority Mail with a tracking number. I paid for the Priority Mail with tracking and
23  received a receipt for mailing via First Class Priority Mail with Tracking from USPS.

24  16.  On Friday September 1, 2023, confirmation of receipt of the Notice utilizing the official USPS
25  website confirming delivery had been made to Adelanto, CA 92301 as set forth on the official
26  USPS website. I again confirmed receipt utilizing the tracking number on Petitioner's parcel with
27  USPS Tracking. On September 1, 2023, at 7:33 a.m. the parcel, *i.e.*, Notice addressed to
28  Petitioner was delivered to the United States Penitentiary, *i.e.*, P.O. Box 3900 as evidenced on

1  the official USPS website, he was then incarcerated.

2  17. As co-Trustee of the Trust I maintain a standard recordkeeping system for all the trust documents, as well as all required mailings, notices, and related proofs of service. It is my regular practice as co-Trustee of the Trust to prepare, mail, and retain copies of each statutory notice required under Probate Code § 16061.7, together with the postal receipts and tracking confirmations showing the date and method of mailing, which are set forth above.

**Notice Complete and Effective on August 30, 2023, Pursuant to Probate Code § 1215(a)(4)**

18. Notice, pursuant to Probate Code § 16061.7, was complete and effective as to Petitioner Luke D. Brugnara on August 30, 2023, within the 60 days of death as required.

19. Copies of the corresponding USPS receipts and delivery confirmations are maintained in the Trust's administrative file. The copy of the Notice and the USPS records made at the time of mailing by myself and/or receipt from USPS, in the ordinary course of the Trust's administration. It is the regular practice of the Trust to make and retain such records at or near the time the mailing occurs.

20. I personally recognize and identify the attached § 16061.7 Notice, Exhibit 6, as the document prepared under my direction, signed on August 16, 2023, by my brother, Eric Brugnara and myself, which signatures I recognize as our signatures, and mailed to the beneficiaries. The document, *i.e.*, Notice, is the same Notice that was delivered pursuant to Probate Code § 1215, unaltered from the version mailed on August 17, 2023, and again on August 30, 2023. The facts stated herein are within my personal knowledge and are true and correct.

21. I have since been made aware that following the delivery of the Notice to Petitioner in Federal prison, Petitioner stated his attorney "friend" Robert Kane, whom he also identified as his *de facto* attorney in this case, contacted Aleo Brugnara and requested to discuss filing an action regarding a similar if not identical complaint utilizing the 1998 Trust, the First Amendment 2004 and the 2017 Restatement of the 1998 Victoria L. Brugnara Trust making similar if not the same vile and utterly false allegations as Petitioner knowingly makes in his verified complaint. All of this is not surprising given Robert Kane Law Offices and Petitioner's Brugnara Corporation (the entities of which owe $193 million to the US Government in addition to other numerous unpaid debts) share the same office address.

22. I further believe this to be true because Mr. Kane contacted both my mother and me by telephone demanding money, claiming that Petitioner owed him money, and claiming my mother is required to pay Petitioner's legal bills, even after my mother had asked him to stop. Mr. Kane also unsuccessfully tried to establish residency for Petitioner at my mother's home with repeated harassing calls, even after she refused to pay Petitioner's legal bills.

23. I have had my personal information redacted because Petitioner Luke Brugnara threatened physical harm to me and my brother and financial harm as well as threatened to destroy my career by coming to my work where he also harassed my co-workers.

24. On July 17, 2025, Judge Moody sustained Respondents'/Defendants' demurrer with leave to amend. The amended petition written by Petitioner with the aid of his *de facto* attorney, Robert Kane, is a further blatant attempt to defame Respondents/Defendants with a new series of absurdly false statements.

25. As usual, Petitioner is trying to game the system with Kane advising him as to what it might take to still contest the trust by making up wildly false claims with purposefully confusing and inaccurate timelines. In a desperate attempt to get his petition past the demurrer stage, he keeps throwing lies, like spaghetti against the wall, to see if any of them stick.

26. In his amendment, Petitioner and Kane concoct their latest slander against Respondents, claiming we administered drugs to our mother beginning vaguely "in the early 2000's" in a pathetic attempt to invalidate the 2004 amendment that disinherited Petitioner. Petitioner and Kane sink to new lows, but as usual, the false claims are nonsensical as they write that the drugs "which had been prescribed to Krista" were administered to our mother. Not only were no drugs, prescribed or otherwise, administered to our mother "in the early 2000's," but I have never had any of these drugs prescribed to me nor have I taken any of them! The fact remains the Petitioner was disinherited over twenty years ago, when our mother was in perfect health and of very sound mind, without any drug use or influence whatsoever by Respondents as Petitioner falsely claims. During this time, she was, in fact, a vibrant, active, and beloved 5th grade teacher. Attached please see attached her W-2's from 2001-2008 above).

27. Having realized that notice had been properly sent pursuant to the prescribed methods of the

Probate Code and his petition/complaint has no standing, Petitioner and his *de facto* attorney, Kane, once again concocted a convoluted allegation focusing on the false claim that Respondents, "in their capacity as trustees..." destroyed Petitioner's "personal property" and also stating that Respondents' "claim that no such personal property exist." Petitioner, in fact, never inquired about any alleged "personal property" and had not been in touch with the Respondents since leaving threatening voice messages for each in mid-May 2023 while on the lam. Petitioner and Kane continue on their dishonest path of inventing lies to attempt to pursue their real goal, which is to invalidate the trust. The fact that Kurt Huysentruyt is included in this cause of action (Petitioner looking for damages against him regarding the purported "personal property") is yet another clear indication of how collectively, all of these false claims (undue influence, elder abuse, infliction of emotional distress, personal property claim,etc) have no purpose other than to attempt to invalidate the trust. Petitioner is trying to hold all Respondents, including Mr. Huysentruyt, financially liable for the alleged "personal property," nothing of which has ever been in any of the Respondents' possession! The only possible explanation of Petitioner's "personal property" lie is that it is fabricated and included by him and de facto attorney Kane in a feeble attempt to game the legal system and negate the statute of limitations.

28. In order to save time and effort, I will not defend myself against each of Petitioner's defamatory and false statements against Respondents. Petitioner is a twice-convicted perjurer, awaiting yet another trial for the latest charges brought against him by the Federal government. Petitioner is also actively trying to extort money out of Respondents by threatening the life and livelihood of Respondents and their attorney. Respondents' attorney is forced to hear threats by Petitioner due to his pro se status (including falsely claiming pauper status to avoid court fees).

29. The one true fact remains that I mailed the Notice in a timely manner to not one, but two of the Petitioner's last known addresses, thus having officially completed effective service pursuant to Probate Code § 1215 upon Petitioner fulfilling my duties as a trustee. The Petitioner missed the deadline for his chance to legally contest our mother's valid trust that she made of sound mind with a self-chosen attorney, Kurt Huyenstruyt, who never met any of her children.

30. On July 18, 2025 the Plaintiff verbally assaulted me outside the doors to the courtroom (dept 204)

7

**DECLARATION OF KRISTA M. BRUGNARA IN SUPPORT OF
RESPONDENTS' MOTION FOR PROTECTIVE ORDER**

|   |   |
|---|---|
| 1 | in front of multiple witnesses prior to the bailiff opening the door to the court. He raised his voice as he hurled insults and false allegations at me in very close physical proximity as I moved to the far end of the hall to avoid him physically while not replying to his tirade. He proceeded to walk towards me with his voice raised and shoved his companion when she tried to stop him from continuing to walk towards me. My attorney also put himself in between us and the bailiff finally opened the door after what felt like a long period. Once we were all in the courtroom, the Plaintiff continued to verbally harass me while staring at me (my attorney directed me to sit behind him so I would not be in such close proximity to the Plaintiff) -the bailiff told the Plaintiff to stop but he replied that he couldn't control himself because he has "mental issues" and was simply talking to himself as he glared at me, using the article "you" as he spewed many defamatory and untrue comments in an effort to intimate me. He said that he hated me more than anyone and that he knows a lot of murders and rapists from prison. The bailiff proceeded to call for two backup bailiffs who arrived as Judge Moody entered the court. When it was time to leave I waited until the Plaintiff left and the bailiff kindly said he would escort me to the exit of the building. |

31. Even after Petitioner was specifically instructed by my attorney to serve me through emails to him, the Petitioner would not stop handing legal documents to my co-workers to give me and leave legal documents strewn across the front steps of my building for anyone to see.

32. On December 17, 2025 the Petitioner arrived in court (dept 204) after I was already seated and, before the door was fully opened he saw me and immediately began to verbally berate, harass and harangue me in front of numerous witnesses while I remained silent. When the bailiff told him to stop and act properly in court, the Petitioner replied by verbally belittling the bailiff, attacking his professionalism and threatening to file {false} claims against him to cause him to lose his job.

33. Just before Judge Moody entered the courtroom, the Petitioner, while glaring at me, said, "You are not going to like how this ends and I don't mean in court..."

34. The Petitioner could not control himself and lost his temper in court, slamming his hand down on the table and hitting the microphone, while he continued to raise his voice to Judge Moody after the next court date was set. I left the courtroom with my attorney and again was escorted to the exit by a bailiff. In the entrance to the Civic Center parking lot the Petitioner arrived as I was paying

|   |   |
|---|---|
| 1 | at the machine and continued his verbal assault in a threatening and harassing manner while my |
| 2 | attorney physically stepped between us as the Petitioner approached me. We immediately got into |
| 3 | the elevator and the Petitioner physically tried to prevent the doors from closing by reaching out |
| 4 | his hands to keep it open while continuing to spew his venom, all with another passenger in the |
| 5 | elevator, visibly disturbed by the Petitioner's actions. |
| 6  35. | The Petitioner wrote to our attorney that he plans to depose me and my brother, Eric, "for days" |

35. The Petitioner wrote to our attorney that he plans to depose me and my brother, Eric, "for days" in a continued attempt to intimidate us. I respectfully ask the court to protect me and all others from being deposed for this case by compelling written depositions only. My concern is not only based on my own disturbing experience of the Petitioner's continued bullying and outbursts, but also based on his lack of decorum in court as detailed by Judge Alsup in federal court, where the pro-per Petitioner constantly berated people on the stand in court, Petitioner was removed from pro-per status in a criminal case being heard by Judge Alsup. This removal from pro-per status was due to Petitioner's witness abuse, denigrating of US attorneys, disparaging members of the FBI and, as stated by Judge Alsup, "For being a bully and a pathological liar." After Judge Alsup removed Pro-per Status, his court-appointed defense attorney, George Bouisseau, stated that the Petitioner was a "delusional, bipolar narcissist, who had no control over his courtroom antics." These antics, according to Boisseau, included "frequent abusive tirades and bombastic falsehoods."

36. Judge Moody addressed Petitioner after his outburst in court on Dec. 17. Indeed, when he acts out like this in a court of law, one can only imagine what the Petitioner is like out on the street. It would be unreasonable for the court to allow the Petitioner to subject me or anyone else to his documented bullying, uncontrolled temper, abusive and dishonest declarations, and threats. If he were to be allowed to verbally interact it would limit who we would be able to ask for depositions, as we would not want to subject them to such predictably disturbing outbursts, intimidation tactics, bullying, and verbal abuse. After the testimonies, Judge Alsup instructed the jury " remember how dishonest Mr. Brugnara has been," and that he (Judge Alsup) would "consider all the lies Mr. Brugnara has told." The Plaintiff was convicted multiple times of making false declarations in court. For the sake of fairness and efficiency, and to prevent abuse of the discovery process by the Plaintiff, I respectfully request the court grant this motion for written depositions. The Plaintiff's

1  history as well as his on-going actions of threatening the defendants, in addition to his excessive
2  demands, disruptive tactics and uncooperative behavior highlight the necessity of written depositions
3  to ensure orderly discovery to focus on the settlor's intent.
4      I declare under penalty of perjury under the laws of the State of California the foregoing is true
5  and correct of my own personal knowledge and if called upon to testify, and as to the information stated
6  on information and belief, which I believe to be true, could and would so testify.
7      Executed this 15th day of January, 2026, in San Francisco County, California.

_____
Krista M. Brugnara

Pld - Decl KMB rev02 F.wpd