UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>LUKE BRUGNARA,<br>Defendant. | Case No. 24-cr-00277-MMC-1 (LJC)<br><br>**ORDER GRANTING UNITED STATES' MOTION TO REVOKE DEFENDANT'S BOND**<br><br>Re: Dkt. Nos. 105, 121 |

Pending before the Court is the United States' Motion to Revoke Bond. ECF No. 105.[1] Defendant Luke Brugnara opposes the motion. ECF No. 122. The government filed a memorandum in support of its motion, as well as a supplemental brief. ECF Nos. 105, 121. On August 3, 2026, the Court held a hearing on the Motion to Revoke. Having considered government counsel, defense counsel, and Brugnara's proffers and arguments, the Court GRANTS the motion for the forgoing reasons.

# I. BACKGROUND

## A. Current and prior criminal cases

The current federal criminal case against Brugnara began on May 21, 2024, when the grand jury returned an indictment charging him with multiple counts of wire fraud and money laundering in relation to an alleged scheme to fraudulently obtain COVID-19 funds. ECF No. 1. These criminal charges are the latest in Brugnara's long history with this Court, and they were filed while Brugnara was under federal supervised release stemming from his prior convictions.

---

[1] All standalone ECF cites, *i.e.* those that are not immediately preceded by a case name and number or "*Id.* at" refer to the docket in the present case, *USA v. Brugnara*, No. 24-cr-00277-MMC-1.

In the early chapters of this history, Brugnara was charged and convicted in three federal cases related to endangering a threatened species of trout, tax evasion, wire fraud, and escape from a criminal proceeding. In 2008 two federal criminal cases against Brugnara commenced. *USA v. Brugnara et al.*, No. 3:08-cr-00236-MMC, ECF No. 1 (indictment charging two counts of making false statements and four counts of violating the Endangered Species Act); *USA v. Brugnara*, No. 3:08-cr-00222-WHA-1, ECF Nos. 1, 68 (original 2008 indictment and 2010 superseding indictment charging Brugnara with two counts of filing false tax returns in 2002, one count of filing false tax returns in 2004, and one count of obstructing the administration of Internal Revenue laws from 1998 through 2005). Following guilty pleas to all counts in these cases, Brugnara was sentenced to prison terms of 15 and 30 months. No. 3:08-cr-00236-MMC, ECF Nos. 54 (application for permission to enter plea of guilty), 101 (judgment); No. 3:08-cr-00222-WHA-1, ECF No. 134 (amended judgement in criminal case). In 2015, the grand jury returned a superseding indictment in connection with a scheme by which Brugnara took possession of art under false pretenses. The grand jury charged him with four counts of wire fraud, one count of mail fraud, two counts of false declaration before court, one count of escape, and one count of contempt of court. *USA v. Brugnara*, No. 3:14-cr-00306-WHA-1, ECF No. 348 at 5–10 (Second Superseding Indictment)[2]. The escape charge was based on Brugnara's widely reported flight from the federal courthouse while meeting with his attorney. *Id.* at ECF Nos. 257 (Order Re Furlough Procedures for Defendant Luke Brugnara), 317 (bench warrant). Though Brugnara was acquitted of three counts—two wire fraud counts (Counts One and Three) and one count of false declaration before court (Count Seven)—he was convicted on all other counts. *Id.* at ECF No. 625 (criminal trial minutes). Brugnara was sentenced to 84 months in prison. *Id.* at ECF No. 787 (judgment).

In 2023, while on federal supervised release from his art-related conviction, Brugnara was charged with violating certain terms that were imposed as part of his sentence. *Id.* at ECF No. 1049 (Second Amended Petition for Warrant for Person Under Supervision). The probation office

---

[2] Citations in this Order to documents filed in the docket refer to page numbers as assigned by the Court's ECF filing system unless otherwise noted.

alleged violations based on conduct that took place in 2021 through 2023. *Id.* In 2023, the presiding judge revoked Brugnara's supervised release and sentenced him to 456 days imprisonment for absconding from supervision and possessing a firearm, among other violations. *Id.* at ECF No. 1157. Brugnara admitted guilt as to leaving the judicial district without permission and failing to pay restitution. *Id.* After a denial of guilt and a four-day evidentiary hearing, Brugnara was found to have violated conditions of his supervised release by possessing a firearm that was located in a storage unit searched by authorities on October 6, 2021. *Id.* at ECF Nos. 1080 at 1 (Order Denying Defendant's Motion for Reconsideration), 1157 (Judgement for Revocation). Brugnara failed to appear for his sentencing hearing and disappeared until he was arrested two months later. *Id.* at ECF Nos. 1088, 1116. During the proceedings in connection with this firearms possession charge, the presiding judge delayed returning the firearm to Yitong Wen, Brugnara's girlfriend and the registered owner of the gun, to protect public safety. He reasoned that there was a "high risk that it would wind up in the hands of Mr. Brugnara and . . . he has a very angry sense." ECF No. 105-2 at 7 (Transcript, 6:20–24). The presiding judge declared that Brugnara "is an unstable fugitive from justice, and I've seen him for many years now." *Id.* at 7:1–3.

**B. Pretrial release in the current case**

In the current case, Brugnara's pretrial release was heavily litigated. ECF Nos. 13 (Pretrial Bail Report), 15 (minute entry for detention hearing), 19 (Order of Detention), 20 (Opposition to Defendant's Motion to Revoke Order of Detention), 22 (Memorandum In Support of Motion to Revoke Detention), 27 and 28 (minute entries for proceedings), 29 (Supplemental Memorandum In Support of USA's Opposition to Defendant's Oral Motion to Revoke Magistrate's Detention Order), 31 (Pretrial Services Informational Memorandum as to Luke Brugnara). Upon consideration of new information, the matter was remanded to this Court to afford Brugnara an opportunity to consider and agree to certain release conditions, including, among other things, residence at a Jackson Street unit and location monitoring. ECF Nos. 31, 35. The remand order emphasized that the prior decision by the magistrate judge granting pretrial detention was not in error, considering the information available at that time. ECF No. 35. On August 8, 2024,

Brugnara agreed to obey these conditions of release; accordingly, he was released from custody. ECF No. 38.

Though Brugnara made several court appearances while on pretrial release, he disregarded some conditions that had been imposed and was highly resistant to location monitoring. Following lengthy and contentious pretrial detention proceedings, GPS tracking revealed that, just two days after his release, Brugnara violated location restrictions by visiting a storage unit where contraband was previously located. ECF No. 40 (Violation Memorandum). Wen accompanied Brugnara at that time because she gave him a ride to his attorney appointment before they made the stop at the storage facility. *Id.* at 2–3. Additional violations were noted on October 15, 2024. ECF No. 49 (Violation Memorandum). On January 8, 2025, Pretrial Services reported Brugnara's either unresponsiveness or volatility towards location monitoring efforts, and the cessation of home visits due to safety concerns; Pretrial Services also acknowledged that for nearly three months, Brugnara had not violated location restrictions. ECF No. 64 at 3 (Status Memorandum).

During this period of pretrial supervision, Brugnara sought to modify his release conditions to remove the electronic monitoring requirement. ECF No. 55 (Motion to Modify Conditions of Release). In a supplemental brief, Brugnara described in detail his prior experience with electronic monitoring in the art fraud case, his period of compliance before he fled, and the pain associated with the ankle device. ECF No. 66. Brugnara filed further information substantiating the medical issues related to the ankle monitor. *See* ECF Nos. 69, 71. On February 5, 2025, the Court conducted a hearing to address the Pretrial Services' January 8, 2025 Status Memorandum and Brugnara's motion for modification, wherein his request was granted and the device was removed. ECF No. 76.

Evidently, Brugnara's behavior worsened in late 2025 and early 2026. No further release condition violations were reported until January 9, 2026, though more information soon came to light. ECF No 95. In its January 9 memorandum, Pretrial Services reported that when its mental health services provider contacted Brugnara to schedule his programming, Brugnara was "verbally abusive" to a degree that the provider was no longer willing to accept him at a patient. *Id.* at 1–2. On January 21, 2026, the Court held a hearing regarding Pretrial Service's memorandum. ECF

No. 98. Brugnara was given an opportunity to respond. *Id*. He disputed Pretrial Services characterization of the interactions and his need for mental health services. *Id.* The Court instructed Brugnara to file a motion if he intended to seek the removal of a release condition, as he had done in connection with electronic monitoring, rather than challenging the mental health treat requirement with the vendor responsible for administering the service. *Id.* The Court admonished Brugnara to work cooperatively and respectfully with those involved in his pretrial supervision. *Id.* Earlier that same month, Brugnara's sister filed a petition seeking a protective order against him. She stated in a sworn declaration that he made threats against her, including on December 17, 2025, by telling her, after a highly confrontational court proceeding in which he lost his temper, "You are not going to like how this ends and I don't mean in court…" ECF No. 105-3, ¶¶ 32–33 (Declaration of K. Brugnara dated January 15, 2026).

The day after Brugnara's court appearance to address his reported lack of cooperation and combativeness with the mental health services provider, he was arrested in Daly City for making threats and being a felon-in-possession of a firearm. ECF No. 105-4 (Police Report). Brugnara had erected a fence at Thorton Beach and, as a couple walked their dog, he approached them and threatened to shoot them. A homemade sign appeared nearby, depicting a drawing of a gun and a warning "Private Property No Trespassing Owner Armed with 9MM Gun" and "Trespassor(s) will be shot." *Id.* Brugnara denied making the sign, though he did not disclaim that he set up the fence. At the time, Brugnara's girlfriend, Wen, was with him. The dog-walking couple reported that Wen chimed in, stating, "Come try me. I'd love to see you try," and Brugnara told them that he "was a billionaire and could do what he wanted." *Id.* at 6. The couple reported standing approximately three feet from the fence, feeling unsafe because Brugnara "seemed too excited about putting a hole in someone," and then leaving the area. *Id.* Later when the authorities were searching for Brugnara, they stopped a nearby vehicle being driven by Wen with Brugnara sitting in the backseat. The authorities located a 9 MM gun in the front passenger seat; it was the same weapon that Brugnara was found previously to have illegally possessed in May 2023. *See id.* at 14–15.

United States District Court
Northern District of California

**C. February Bond review hearing, flight, arrest and revocation hearing**

On January 29, 2026, Pretrial Services filed a violation memorandum indicating Brugnara's arrest for alleged criminal conduct in Daly City on January 21, 2026, and his failure to disclose the arrest in his January 23, 2026 voicemail to his pretrial supervising officer. ECF No. 99 at 2 ("defendant alluded to an 'incident' and noted that his lawyer was handling it."). On the same day as the violation memorandum was filed, the Court issued an order at 6:10 pm setting a Bail Review Hearing at the courthouse on Friday, January 30, 2026 at 3:00 pm. ECF No. 100. On January 30, 2026, Brugnara did not appear. ECF No. 102. The Court noted that Brugnara apparently had not received notice of the hearing because his cell phone had been seized upon his arrest in Daly City, and his girlfriend, Wen, was unable to convey the message. *Id.* Accordingly, the hearing was to be rescheduled to a date the following week before the undersigned or the presiding district judge. *Id.*

On February 2, 2026, at 2:59 pm, a Clerk's Notice was issued, setting the February 4, 2026 bond hearing for 11:30 am in the undersigned's courtroom. ECF No. 103. On February 3, 2026, at 11:22 am, defense counsel emailed the courtroom deputy and government counsel, requesting that the hearing time be changed to 12:30 pm.[3] In addition, defense counsel wrote that he was unable to confirm, at that time, that Brugnara was aware of the hearing date and time. According to counsel, Brugnara did not have possession of his phone, but on Monday, February 2, 2026 at about 12:30 pm, Brugnara had called him, apparently on a borrowed phone.[4] However, by that point, the Clerk's Notice with the date, time, and location had not yet issued. Defense counsel stated that he had emailed Brugnara the day before (February 2), letting him know about the hearing, but he hadn't received a response from Brugnara, and he could not be certain that Brugnara was receiving emails, given that he did not have his phone.

Soon after defense counsel's email, another Clerk's Notice issued—on February 3, 2026, at 1:17 pm to be precise—resetting the bond hearing for 12:30 pm on February 4, 2026; the hearing date and location remained the same. ECF No. 104. Ten minutes after the Clerk reset the

---

[3] A true and correct copy of this email has been attached to this Order as Exhibit A.
[4] A filing by Brugnara on February 23, 2026 indicated that Brugnara was in fact in communication with his defense counsel. ECF No. 110 at 22.

United States District Court
Northern District of California

hearing time, the government filed its Motion to Revoke Defendant's Bond. ECF No. 105.

The following day, Brugnara failed to appear for the bond hearing. ECF No. 106. The Court heard argument regarding Brugnara's non-appearance, determined that he had sufficient notice of the hearing, and ordered that a Bench Warrant for Failure to Appear issue. ECF No. 106. The next day, on February 5, 2026, defense counsel filed a motion to withdraw as counsel. ECF No. 107. The morning of February 6, 2026, the Clerk's Office received from Brugnara a document entitled "Objection to Council Withdraw," in which he objected to his counsel's motion to withdraw and asked the Court to reprimand his counsel for not filing a response to the government's 25-page Motion to Revoke. ECF No. 109.

On February 23, 2026, Brugnara himself filed a twenty-five page "Requests for Judicial Ruling/Order" seeking to keep his bail conditions unchanged. ECF No. 110. This filing describes Brugnara's communication with his counsel on February 2, 2026, wherein Brugnara admits that he was aware that the hearing would be reset for that week. *Id.* at 22. Brugnara stated, "Since that date [February 2, 2026], I have not heard from Matt [counsel], nor Josh [pretrial services officer]." *Id.* On March 13, 2026, Brugnara filed, with assistance from court staff, a "Request for Judicial Bench Ruling Affirming Bail Conditions," in which he asked the Court to "restate my bail conditions so I can prepare for trial as an innocent man." ECF No. 113 at 1, 6. Brugnara further stated, "I must meet with my attorney Matt Dirkes to prepare for trial." *Id.* at 6. Because Brugnara has counsel of record, he is not entitled to file documents on his own behalf. Therefore, the undersigned has not ordered responses from the government and has not taken action on Brugnara's requests.

The government reported Brugnara's fugitive status to the presiding judge, and both the pretrial deadlines and the June 1, 2026 trial date were vacated. ECF Nos. 115–118. On July 30, 2026, Brugnara was located. ECF No. 121 (Supplemental Brief ISO United States' Motion to Revoke Defendant's Bond) at 2. When U.S. Marshals attempted to execute the warrant at the house where he had been residing, he fled, climbing onto the roof of neighboring church, but he was quickly apprehended. *Id.* at 2–3.

After Brugnara's apprehension and his initial appearance, the Court held a status

United States District Court
Northern District of California

conference and hearing on August 3, 2026. ECF No. 122. At that time the parties agreed to defer argument on defense counsel's Motion to Withdraw to a later date, in the interest of proceeding with the Motion to Revoke hearing at that time. At that hearing, Brugnara opposed revocation and proposed modified release conditions, including $50,000 bond, GPS monitoring, and a designated custodian. The government and Pretrial Services opposed these modifications. When Brugnara became belligerent and disruptive during the hearing, the Court had him removed and took the Motion to Revoke under submission.

## II. ANALYSIS

Under the Bail Reform Act, the Court "shall enter an order of revocation and detention if, after a hearing," it

> **(1)** finds that there is—
>
> > **(A)** probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
> >
> > **(B)** clear and convincing evidence that the person has violated any other condition of release; and
>
> **(2)** finds that—
>
> > **(A)** based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
> >
> > **(B)** the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148(b). "If there is probable cause to believe that, while on release, the person committed a Federal, State, or Local felony, a rebuttable presumption arises that no combination of conditions exists to assure that the defendant will not pose a danger to the community." *Id.*

With respect to the first prong, the government has made both showings. *See* 18 U.S.C. § 3148(b)(1). First, there is probable cause to believe that Brugnara has committed at least one felony crime while on pretrial release, based on his January 21, 2026 arrest in Daly City. According to the police report documenting his arrest, Brugnara made threats and was a felon in possession of a weapon. The threat charge is indicated as a felony on the police report, though it

is a wobbler under California Penal Code Section 422(a). However, the gun possession charge is clearly a felony.

Moreover, the government has established by clear and convincing evidence that Brugnara violated other conditions of release, including failing to appear for all proceedings as ordered by the Court, and absconding from pretrial supervision. *See* ECF No. 38. Brugnara disputes that he had adequate notice of his recent bond review hearing. However, Brugnara was aware that the Court intended to hold a bond review hearing on the week of February 2, 2026. Though Brugnara's counsel was unable to communicate with him through the usual means of calling Brugnara's phone, because it was seized when Brugnara was arrested, Brugnara called his counsel on February 2, 2026. During that call, Brugnara was alerted to the upcoming, though yet to be scheduled, bond review hearing. Brugnara states that after February 2, 2026 he "had not heard from" from his defense attorney or pretrial services officer. ECF No. 110 at 22. Brugnara was obliged under his bond conditions to make a reasonable effort to stay in communication with his pretrial services officer and his attorney to ensure that he stayed informed of court dates and made all required court appearances. ECF No. 38. Brugnara's apparent failure to call his counsel or Pretrial Services, or to check his email, indicates that he was evading an appearance at the February 4, 2026 hearing. Brugnara's later filings with the Court also indicate that he knew he was at risk of having his bond revoked and he was likely monitoring the case docket, and thus, would be aware of clerk's notices, court minutes, the issuance of a bench warrant, and other filings. For example, on February 6, 2026, Brugnara complained in a filing that his attorney had not filed a response to the government's motion to revoke his bond, which he described as "a 25 pages (sic) filing which is a completely lies (sic) and false statement with no truthful statement." ECF No. 109. Nonetheless, instead of turning himself in to the authorities to reset a new date for his appearance in Court, Brugnara's whereabouts were unknown for months.

With respect to the second statutory prong, the Court addresses whether Brugnara is "unlikely to abide by any condition or combination of conditions of release" and whether under the factors set forth in 18 U.S.C. 1342(g), "there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other

United States District Court
Northern District of California

person or the community." *See* 18 U.S.C. § 3148(b)(2). Based on Brugnara's lengthy criminal history and his pattern of fleeing criminal proceedings, as well as his recent erratic and threatening conduct, his ability to access a firearm, and his resistance to mental health treatment, the Court finds that revoking the bond and renewing his pretrial detention is warranted.

Brugnara contends that in this case, for many months, he was compliant with his release conditions and had no problems with making his court appearances. In connection with an earlier motion, Brugnara detailed 14 months of compliance with pretrial release conditions that included electronic location monitoring in his art fraud case. *See* ECF No. 66. He urges the Court to place minimal weight on his conduct from long ago. Though Brugnara has demonstrated some periods of compliance with release conditions, his decades-long history, in addition to more recent conduct, shows an entrenched, persistent willingness to disregard court orders and flee. Brugnara fled in his art fraud case. He fled during the Form 12 proceedings in which he was accused of violating terms of his supervised release. He fled again in this case, concerning PPP loans. Once Brugnara has taken flight, he has never voluntarily surrendered following the issuance of a bench warrant.

Brugnara further argues that he is innocent of the charges, and that pretrial release is justified in a "white collar case." He misunderstands the applicable standard under the Bail Reform Act. The government is not required to establish his guilt to have him detained. Nor does the Bail Reform Act establish an exception to pretrial detention in "white collar cases."

Brugnara's self-control seems to be deteriorating. He confronted his sister in a threatening manner, and his reported conduct at Thorton Beach was beyond the pale. His flight and outbursts in court indicate a growing instability and desperation to avoid custody. His past refusal to participate in mental health treatment exacerbates the degree of risk posed in this case, as does his ability to access a firearm through his girlfriend Wen—even after a judge expressed specific concerns about safety to the public. Though these concerns were raised in connection with whether a previously seized gun should be returned to Wen, not in the context of pretrial detention proceedings, the Court still takes those concerns into account. These concerns raised three years ago flagged Brugnara's instability and anger, and his mode of operation wherein he maintains

access to a firearm through an associate.

Finally, Brugnara urges the Court to consider modifications to his release conditions that, in his view, would provide sufficient assurances of his future compliance. He proposed providing $50,000 in cash to secure his bond, identified a custodian, and is willing to agree to GPS monitoring. Given Brugnara's instability, consistent pattern of flight, and his general unreliability, the Court lacks confidence that a cash bond will reasonably assure his appearance at all court proceedings, including sentencing (if the case advances to that point).[5] Furthermore, Defense counsel proffered that Brugnara befriended the proposed custodian in recent years but Brugnara quickly interjected that they had known each other for twenty years. Brugnara emphasized that the proposed custodian is a well-regarded, experienced investment executive. However, given the Court's past experience with Brugnara, including observations of his relationship with Wen, Brugnara is not amenable to custodianship. The record is sparse as to Brugnara's willingness to be cooperative. He appears to be an overbearing person who does not hesitate to seize control in any relationship or circumstance. Brugnara's proposed custodian may either be an enabler of his misconduct, or otherwise may be easily overpowered by Brugnara, especially because he is no stranger to making threats. Finally, GPS is not a viable solution when Brugnara previously requested removal of the location monitoring condition because of pain and other medical issues related to wearing the ankle monitor. The proposed modifications are insufficient to mitigate the risk of flight, and Brugnara's flight would pose an attendant danger to others in the community given his threatening behavior. 18 U.S.C. § 3148(b)(2)(A). Moreover, the record reveals plainly that Brugnara is unlikely to abide by conditions of pretrial release. 18 U.S.C. § 3148(b)(2)(B).

## III. CONCLUSION

The United States' Motion to Revoke Defendant's Bond is GRANTED. ECF No. 105.

**IT IS SO ORDERED.**

---

[5] At the August 3, 2026 hearing, Brugnara asserted that, "You can't pay me enough to be in jail one day. If you said 'Luke, I'll give you a billion dollars, go sit in jail one day.' It's the same as you, you wouldn't take that billion. You want your freedom and I want mine." Given Brugnara's self-stated premium on remaining out of pretrial custody at all costs, the Court is not persuaded that $50,000 bond is sufficient incentive in this instance.

Dated: August 5, 2026

LISA J. CISNEROS
United States Magistrate Judge

United States District Court
Northern District of California